## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MEGAN ANN D., | Case No.: 1:23-cv-00027-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Megan Ann D.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On July 14, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits; Plaintiff also protectively filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning June 5, 2020. The claims were originally denied on December 1, 2020, and again on reconsideration on July 15, 2021. On or around July 22, 2021, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 19, 2022, ALJ David Wells held an online video hearing (due to the COVID-19 Pandemic), at which time Plaintiff, appearing with her attorney, testified. Katherine Jett, an impartial vocational expert, also appeared and testified at the same hearing.

On May 2, 2022, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review

**MEMORANDUM DECISION AND ORDER - 1**

from the Appeals Council.  On November 21, 2022, the Appeals Council denied Plaintiff's

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social

Security.

Plaintiff, having exhausted her administrative remedies, brings this case.  She contends

the ALJ erred in a single respect: the ALJ's residual functional capacity assessment is

unsupported by substantial evidence because the ALJ failed to identify or consider certain

Letters of Accommodation from Cheryl Rose, the Coordinator for Student Disability Services at

the College of Western Idaho.  Pl.'s Brief at 1, 7-12 (Dkt. 15).  Plaintiff requests that the Court

either reverse the ALJ's decision and find that she is entitled to benefits, or remand the case for

further proceedings.  *Id*. at 12; *see also* Compl. at 2 (Dkt. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g);  *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.

Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide

whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

**MEMORANDUM DECISION AND ORDER - 3**

or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 5, 2020, the alleged onset date.  AR 16.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff has the following severe medically determinable impairments: "autism, attention deficit hyperactivity disorder (ADHD), depression, and anxiety."  AR 16-17.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ

**MEMORANDUM DECISION AND ORDER - 4**

concluded that Plaintiff's above-listed medically determinable impairments, while severe, do not

meet or medically equal, either singly or in combination, the criteria established for any of the

qualifying impairments.  AR 17-18.

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity ("RFC") is sufficient for her to perform past relevant

work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to

do physical and mental work activities on a sustained basis despite limitations from her

impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work lasted long enough for the claimant to learn to do the job and be engaged

in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of work at
> all exertional levels but with the following nonexertional limitations: She can
> perform routine and repetitive unskilled type tasks.  She would be limited to
> simple work-related decisions utilizing judgment or dealing with changes in
> the work setting.  She can occasionally interact with supervisors and
> coworkers, but she would not be required to work with the general public.  Her
> job would not require the assistance from a coworker to perform her unskilled
> task, but she can have incidental contact with coworkers in the work area.

AR 18-19.

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of her impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do

other work and meets the duration requirement, she is disabled.  Here, the ALJ found that

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiff was unable to perform any past relevant work as a mortgage clerk, but nonetheless was capable of working full-time in the following occupations: hand packager, equipment washer, and industrial cleaner. AR 23-25. Based on these findings, the ALJ concluded that Plaintiff was not under a disability from June 5, 2020, the alleged onset date, through the date of the May 2, 2022 decision. AR 25.

**B.      Analysis**

For both the Summer 2020 and Fall 2020 semesters, Plaintiff was a student at the College of Western Idaho. AR 255-61. During that time, the school's Coordinator of Student Disability Services, Cheryl Rose, drafted Letters of Accommodation relating to Plaintiff's coursework. *Id*. These Letters of Accommodation indicated that, "[t]o enhance the [Plaintiff's] ability to understand course information, [she] would benefit from [certain] accommodations," including: (i) a tape recorder to record lectures as needed; (ii) providing Plaintiff with full assignment information at least one to two days prior to the assignment due date; (iii) providing Plaintiff with hard-copies of any presentation materials; (iv) extended testing (time-and-a-half); (v) a distraction-reduced testing room; (vi) a designated reader to read Plaintiff's test instructions and questions out loud; and (vii) the ability to listen to music during testing. *Id*.

The ALJ did not consider these Letters of Accommodation at all when crafting Plaintiff's RFC. He instead specifically touted Plaintiff's participation as a student in college courses to undermine the more extreme functional limitations opined by James Bruce, Ph.D., following Dr. Bruce's July 2021 consultative psychological examination of Plaintiff:

> Dr. Bruce opined that the claimant has moderate difficulty with understanding and remembering, moderate to marked difficulty with sustaining concentration, marked difficulty with persistence/pace and social interaction, and moderate to marked difficulty with adaptability. *The opinion of Dr. Bruce is not persuasive. The evidence does not support a finding that the claimant has any areas of marked difficulty or moderate to marked difficulty in functioning. The claimant has attended college courses, and although she has*

**MEMORANDUM DECISION AND ORDER - 6**

> *struggled, the fact that she got into, attended, and maintained as a student for a long period of time suggests that the claimant is far more capable than alleged.*

AR 22 (citing AR 511 (Dr. Bruce's opinion), emphasis added); *see also* AR 20 (considering an April 2020 neuropsychological assessment, ALJ similarly stating: "The claimant was actually taking college level courses at the time of the evaluation, which suggests that she is fairly capable of dealing with advanced studies.").  Departing from Dr. Bruce's opinions, the ALJ then found that, owing to Plaintiff's status as a college student, she has only moderate difficulty with sustaining concentration (not moderate to marked), moderate difficulty with persistence/pace (not marked), moderate difficulty with social interaction (not marked), and moderate difficulty with adaptability (not moderate to marked).  *Id.*  In turn, Plaintiff's RFC included several limitations that took into account these more tempered functional limitations.  *Id.*

　　　Plaintiff contends that the ALJ's failure to consider the Letters of Accommodation was error.  She argues that her RFC is unsupported by substantial evidence because the ALJ failed to consider the entire record – in particular the Letters of Accommodation – and therefore is based upon a misimpression about Plaintiff's ability to complete her college coursework.  Pl.'s Brief at 7-9 (Dkt. 15) (citing *Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (although ALJ "need not discuss *all* evidence presented," he must explain why "significant probative evidence has been rejected") (citation omitted, emphasis in original)).  Applying these same accommodations to a work setting, says Plaintiff, "could potentially preclude Plaintiff's ability to perform any full-time work in the national economy."  *Id.* at 8-9 (citing 20 C.F.R. §§ 404.1573(c), 416.973(c)).  In response, Defendant contends that the Letters of Accommodation amount to "nonmedical source evidence" and that the ALJ "reasonably considered the nonmedical source statements under the Commissioner's revised regulations."  Def.'s Brief at 2 (Dkt. 17).  Defendant's counterargument is not persuasive in this particular context.

**MEMORANDUM DECISION AND ORDER - 7**

According to Defendant, under the 2017 regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting evidence from nonmedical sources. *Id*. (citing 20 C.F.R. §§ 404.1520c(d), 416.920c(d)).  Subsection (d) of these new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence.  *Id*. at §§ 404.1520c(a)-(c), 416.920c(a)-(c).  Thus, under the new regulations, an ALJ is not required to use the revised standards for evaluating medical opinion evidence when evaluating nonmedical source evidence.

But critically, the Ninth Circuit has not yet decided whether the new regulations affect the once understood requirement in the circuit that an ALJ must give germane reasons for rejecting nonmedical source evidence.  *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. 2023) ("We have not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses.  However, we need not decide this issue because any error in not addressing these lay witnesses' testimony was harmless."); *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions.").[1] Some courts in this circuit have concluded that the new regulations do away with an ALJ's obligation specifically to address nonmedical source evidence, but the majority of courts in this circuit – including this district court – have concluded the opposite.  *See Tracy Q. v. Kijakazi*,

---

[1]  Given the revised regulations, the Court understands *Fryer's* dicta in this respect to mean only that it is clear that ALJs are no longer required to articulate how they considered lay witness evidence *using the requirements in paragraphs (a)-(c) of 20 C.F.R. §§ 404.1520c and 416.920c*. *Infra*.

**MEMORANDUM DECISION AND ORDER - 8**

2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) (collecting cases); *see also Sharon W. v. Kijakazi*,

2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023) ("This Court agrees with the well-reasoned

decisions holding ALJs must continue to give germane reasons for discounting lay witness

testimony and even under the new regulations that an ALJ's failure to address lay testimony is

error.") (internal quotation marks omitted).

The Court reads the new regulations as not eliminating an ALJ's obligation to consider

and address nonmedical source evidence, including an obligation to articulate germane reasons

for disregarding that same evidence.  To be sure, the new regulations state only that evidence

from nonmedical sources is not held to the *same standard* as medical evidence; they "say[ ]

nothing about the standard to which nonmedical [source evidence] *is held*."  *Tracy Q.*, 2024 WL

706963, at *8 (emphasis added); *see also Jeffrey W. G. v. O'Malley*, 2024 WL 265595, at *12

(D. Idaho Jan. 23, 2024) ("The language of 20 C.F.R. § 404.150c(d) and 20 C.F.R. § 416.920c(d)

provides that the agency need not use the criteria outlined for evaluation of medical sources

when evaluating nonmedical sources, not that the agency need not articulate its reasoning at all

when evaluating nonmedical sources.").  Given this unsettled area of law, Ninth Circuit

precedent exists to continue requiring that an ALJ provide germane reasons for discounting

nonmedical source evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth

Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the

reasoning or theory of intervening higher authority, which in this case is the agency's updated

regulations."); *see also Jeffrey W.G.*, 2024 WL 265595, at *12.  This obligation allows the Court

to meaningfully determine whether the ALJ's conclusions are free of legal error and supported

by substantial evidence.

Here, the ALJ altogether failed to consider the Letters of Accommodation.  He did not

even mention them in his decision.  *Compare with* Def.'s Brief at 2 ("The ALJ reasonably

**MEMORANDUM DECISION AND ORDER - 9**

considered the nonmedical source statements . . . .").  It therefore goes without saying that the ALJ did not provide germane reasons for discounting the Letters of Accommodation.  The Court is not convinced this error was harmless.

A failure to address nonmedical source evidence may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. 2022).  Courts recognize that an ALJ's failure to comment upon nonmedical source evidence is harmless "where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the nonmedical source's] claims."  *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal quotation marks omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [the lay] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay] testimony.").  Defendant raises no harmlessness claim, nor does the Court see one under the circumstances.

This is not a case where the nonmedical source evidence equates to Plaintiff's subjective symptom testimony such that the ALJ's consideration of Plaintiff's testimony applies equally to it.  Those situations typically arise where the nonmedical source evidence is lay testimony.  *See, e.g.*, *Mercedes Dawn C. v. O'Malley*, 2024 WL 404502, at *5 (D. Idaho Feb. 2, 2024) ("Here, the statement of Plaintiff's mother parallels Plaintiff's own subjective symptom testimony.  While Plaintiff's mother provides greater descriptive details, both statements cite pain as Plaintiff's primary limitation, mirror in their descriptions of Plaintiff's daily activities, and offer substantially similar descriptions of Plaintiff's limitations and abilities.  As noted above, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.  Those reasons apply equally to the nonmedical source statements.").  But here, the nonmedical

**MEMORANDUM DECISION AND ORDER - 10**

source evidence – the Letters of Accommodation – are not like lay testimony.  They do not simply replicate Plaintiff's subjective complaints about the disabling effects of her impairments. Rather, they establish that Plaintiff was provided various accommodations to help her understand course information while at school.  Because this goes directly to the crux of the ALJ's reasons for discounting Dr. Bruce's opinions, and likewise for Plaintiff's RFC based upon less restrictive limitations and the corresponding testimony from the vocational expert, the Court struggles to see how the ALJ's complete failure to consider and address the Letters of Accommodation can be understood as harmless.

This conclusion also aligns with *Santos v. Colvin*, 2013 WL 5176846 (W.D. Wash. Sept. 12, 2013), a case that, though factually distinct, Plaintiff cites in support of her appeal.  Pl.'s Brief at 9 (Dkt. 15).  There, the court found that the ALJ committed reversible error in failing to assess the vocational impact of the plaintiff's use of a service dog where there was "at least some evidence in the record that plaintiff's use of a service dog [was] medically necessary" and "that failure to accommodate the use thereof may have a significant adverse impact on the ability of plaintiff to function mentally, including in the workplace."  *Id*. at *6; *but see Caralee Joy S. v. Kijakazi*, 2021 WL 4888505, at *4 (D. Idaho Oct. 19, 2021) (distinguishing *Santos* because "there is no evidence in the record from any medical provider that Petitioner's service dog was medically necessary, or that working without her service dog would cause her to experience significant adverse effects in the workplace.").  Plaintiff analogizes the service dog in *Santos* to her Letters of Accommodation here, arguing that they too constitute significant probative evidence that the ALJ should have discussed.  Pl.'s Brief at 9-12 (Dkt. 15).  Defendant counters that, unlike *Santos* (and more like *Caralee Joy S.*), there is no evidence that the accommodations referenced in the Letters of Accommodation are actually medically necessary.  Def.'s Brief at 3-4 (Dkt. 17).  But the ALJ never squarely confronts this issue.  Indeed, that is the problem.

**MEMORANDUM DECISION AND ORDER - 11**

In an April 2020 neuropsychological assessment, Carolyn S. Golden, Psy.D., indicated that Plaintiff "has had difficulties in work and school settings" and that "[a]daptive supports might include . . . common accommodations for [autism spectrum disorder], ADHD, and anxiety, including reduced distraction testing environments, prioritizing email or written communication instead of in-person communication, [and] emphasizing direct communication of expectations and information, rather than implied communication." AR 363; *see also* AR 364 (Dr. Golden noting: "[Plaintiff] experiences educational difficulties, not due to academic problems, but due to difficulties with processing indirect communication, and difficulties related to ADHD.  Educational supports are encouraged, including extended time on testing/assignments where feasible, reduced distraction testing environment, and support communicating with professors effectively.").  As well, Plaintiff testified that she has benefitted from these accommodations.  AR 51 ("I've always struggled with school.  The only time I passed is if teachers have overlooked late assignments.  I've had some wonderful, wonderful professors and teachers who will let me turn in assignments late, do tests late.").  In short, "at least some evidence" exists in the record supporting the notion that the accommodations reflected within the Letters of Accommodation are medically necessary.  *See Santos*, 2013 WL 5176846, at *6.

Yet, the ALJ found that Plaintiff could work, in part, because of her perceived performance in school.  *Supra* (citing AR 20, 22).  Though the ALJ included limitations in Plaintiff's RFC to take into consideration her social and behavioral symptoms, it is unclear whether the ALJ considered and implicitly discounted the Letters of Accommodation when actually assessing Plaintiff's RFC and in determining that she could perform jobs that exist in the national economy.  Because the ALJ never considered the Letters of Accommodation to begin with, he never discussed whether Plaintiff needs these accommodations to attain the level of RFC described, or whether the RFC reflects Plaintiff's capacity to work without the

**MEMORANDUM DECISION AND ORDER - 12**

accommodations.  At bottom, Plaintiff's need for accommodations are at issue, and the ALJ

erred when he failed to explain Plaintiff's RFC without referencing the Letters of

Accommodation.  *See Santos*, 2013 WL 5176846, at *8 (remanding the case where significant

probative evidence suggested that plaintiff needed his service dog, and the ALJ failed to consider

whether the plaintiff's need for the service dog would limit his ability to work).  That Plaintiff

may have never used the accommodations, *see* Def.'s Brief at 3-4 (Dkt. 17) (citing AR 510 (Dr.

Bruce noting that Plaintiff "[h]as accommodations but she fails to employ them")), does not *ipso

facto* resolve the issue given the conflicting evidence in the record on that point, coupled with the

ALJ's failure to even consider the issue.

Accordingly, the Court remands the case for further proceedings for the ALJ to analyze

whether the Letters of Accommodation affect the formulation of Plaintiff's RFC and

consequently the jobs that she can perform.

## IV.  <u>CONCLUSION</u>

When an ALJ's denial of benefits is not supported by the record, district courts possess

discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of

benefits.  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The proper course

turns on the utility of further proceedings.  A remand for an award of benefits is appropriate

when no useful purpose would be served by further administrative proceedings and when the

record has been fully developed and the evidence is insufficient to support the Commissioner's

decision.  *Id.* at 1100.  In most cases, however, remand for additional investigation or

explanation is preferred.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).  Such remands

allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, the record has not been fully developed.  Specifically, the ALJ did not

consider and analyze whether the Letters of Accommodation affect the formulation of Plaintiff's

**MEMORANDUM DECISION AND ORDER - 13**

RFC and consequently the jobs that she can perform.  The court will remand the case for the ALJ to conduct this analysis.

## V.  ORDER

Based on the foregoing, Plaintiff's Complaint and Memorandum of Law in Support of a Social Security Appeal  (Dkts. 1 & 15) are **GRANTED**, and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED:  March 27, 2024



_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**